UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:14-CV-00124-TBR

LIFE CARE CENTERS OF AMERICA, INC. *et al.*            Plaintiffs

v.

THE ESTATE OF FRANCES M. NEBLETT, *et al*.             Defendants

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Defendants' Motion to Dismiss. (Docket #5). Plaintiffs have responded. (Docket #6). This matter is ripe for adjudication. For the following reasons, the Court will DENY Defendant's Motion to Dismiss. (Docket #5).

BACKGROUND

Frances M. Neblett was a resident of Parkview Nursing and Rehabilitation Center ("Parkview") from November 12 to November 17, 2013. As part of the check-in process, Neblett signed an agreement to submit all disputes to arbitration. (Docket #1). While at Parkview, Neblett allegedly "suffered physical and emotional injuries due to inadequate care" which resulted in her death. (Docket #5).

On May 21, 2014, Neblett's estate and Neblett's spouse, Floyd Neblett, filed a state action in McCracken County against Life Care Centers of America, Inc. ("Life Care"), Consolidated Resources Health Care Fund I, L.P. ("Consolidated Resources"), and Lori Moberly, the administrator of Parkview.

On June 25, 2014, Life Care and Consolidated Resources filed the present action against Neblett's estate and Floyd Neblett. Life Care and Consolidated seek to enjoin the

state court action and to compel arbitration. Moberly is not a party to this action. Moberly is a resident of Kentucky, as are Defendants in this case. Life Care and Consolidated Resources are organized and have their principal place of business in Tennessee.

Life Care and Consolidated seek to enjoin Defendants' state court action and compel arbitration pursuant to the Federal Arbitration Act ("FAA"). 9 U.S.C. § 4. Defendants move the Court to dismiss Plaintiffs' Complaint for (I) lack of subject matter jurisdiction, (II) failure to join a necessary party, (III) request the Court to abstain from exercising jurisdiction; and (IV) dismiss the complaint because the arbitration agreement is invalid and unenforceable.[1]

STANDARD

Federal Rule of Civil Procedure 12(b)(1) provides that a party may file a motion to dismiss for lack of subject-matter jurisdiction. "Subject matter jurisdiction is always a threshold determination," *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)), and "may be raised at any stage in the proceedings," *Shultz v. Gen. R.V. Ctr.*, 512 F.3d 754, 756 (6th Cir. 2008). Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff bears the burden of proving jurisdiction in order to survive the motion. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (citing *Rogers v. Stratton Indus., Inc.,* 798 F.2d 913, 915 (6th Cir. 1986)); *see also DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). "If the court determines at any

---

[1] Defendants also argue their wrongful death and loss of spousal consortium claims are not covered by the arbitration agreement. (Docket #5). The parties also argue this issue in Plaintiff's motion to compel arbitration (Docket #9) and the Court will address that argument with that motion.

2

time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Bauer v. RBX Indus. Inc.*, 368 F.3d 569 (6th Cir. 2004). A federal district court has original diversity jurisdiction over an action between citizens of different states and where the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a).

The Federal Rules of Civil Procedure require that pleadings, including complaints, contain a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a claim or case because the complaint fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b). When considering a Rule 12(b)(6) motion to dismiss, the court must presume all of the factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

Even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Instead, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). A

3

complaint should contain enough facts "to state a claim to relief that is plausible on its face." *Id.* at 570. A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). If, from the well-pleaded facts, the court cannot "infer more than the mere possibility of misconduct, the complaint has alleged - but has not 'show[n]' - 'that the pleader is entitled to relief.'" *Id.* at 1950 (citing Fed. R. Civ. P. 8(a)(2)). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

## DISCUSSION

**I.  This Court has subject matter jurisdiction.**

Defendants argue that this case should be dismissed because this Court lacks subject-matter jurisdiction. Federal courts have subject matter jurisdiction over federal question cases and diversity cases between citizens of different states where the amount in controversy exceeds $75,000. 28 USCS §§ 1331, 1332. The parties agree that federal question is not a basis for jurisdiction. The parties dispute whether this Court has diversity jurisdiction.

Federal jurisdiction under 28 U.S.C. 1332 exists "only if complete diversity of citizenship exists, such that no party has the same citizenship of any opposing party." *PaineWebber, Inc. v. Cohen*, 276 F.3d 197 (2001) (citations omitted). Defendants, residents of Kentucky, are completely diverse from Plaintiffs, who are incorporated and have their principal place of business in Tennessee. Therefore, this Court has subject matter jurisdiction.

Defendants argue that notwithstanding the complete diversity in this case, this Court lacks subject-matter jurisdiction because there is not complete diversity in the

McCracken Circuit Court case. In the state case, Defendants and Moberly are opposing parties and are each residents of Kentucky. Defendants argue that *Vaden v. Discover Bank*, 556 U.S. 49 (2009) stands for the proposition "that, in cases involving arbitration questions, it is ***to the underlying controversy*** to which this Court must look regarding questions of subject-matter jurisdiction." (emphasis in original) (Docket #5). This Court has previously addressed this argument and held that *Vaden*'s "look through" analysis applies only to federal-question cases. *Sun Healthcare Group, Inc. v. Dowdy*, 2014 U.S. Dist. LEXIS 24285 *7-12 (W.D. Ky. 2014); *see also Northport Health Servs. of Ark., LLC v. Rutherford*, 605 F.3d 483 (8th Cir. 2010); *Richmond Health Facilities - Kenwood, LP v. Nichols*, 2014 U.S. Dist. LEXIS 112567 (E.D. Ky. 2014). The "look through" analysis in *Vaden* is limited to federal-question cases because "*Vaden* involved a federal-question, explicitly stated it was only applicable to federal-question cases, and that the circuit conflict it sought to resolve involved only federal-question cases." *Sun Healthcare*, 2014 U.S. Dist. LEXIS 24285 at *11. Defendants' position would also require the Court to ignore the "traditional principle of diversity jurisdiction is that it cannot be defeated by a non-diverse joint tortfeasor who is not a party to the federal action." *Northport Health*, 605 F.3d at 490-91.

The parties presently before the Court are completely diverse, thereby providing this Court with subject matter jurisdiction.

## II. Moberly is not a necessary party.

Defendants alternatively ask this Court to dismiss the complaint because Moberly is a "necessary and indispensable" party but has not been joined. (Docket #5).

A party is necessary if one of two conditions are met: (1) in the party's absence, the court cannot "accord complete relief among existing parties;" or, (2) if the party claims an interest relating to the subject of the action and disposing of the action in the party's absence would impair the absent party's ability to protect that interest or expose an existing party to substantial risk of multiple or inconsistent obligations. Fed. R. Civ. P. 19(a); *Sch. Dist. v. Sec'y of the United States Dep't of Educ.*, 584 F.3d 253, 264 (6th Cir. 2009). Moberly meets none of these conditions and therefore is not a necessary party.

Complete relief is "determined on the basis of those persons who are already parties, and not as between a party and the absent person whose joinder is sought." *Id.* (collecting cases). Moberly's absence does not prevent Defendants from seeking complete relief on their tort claims from Plaintiffs, nor does it prevent Plaintiffs from seeking complete relief on their contract claims from Defendants.

Furthermore, Moberly's interest in how the arbitration agreement is interpreted is also insufficient to make Moberly a necessary party. *PaineWebber, Inc. Cohen*, 276 F.3d 197, 203 (6th Cir. 2001) ("Cohen's fear that the federal and state courts will reach conflicting interpretations of the arbitration clauses does not present the degree of prejudice necessary to support a conclusion that Wilhelm is an indispensable party."); s*ee also Northport*, 605 F.3d at 491 ("In the arbitration context, to our knowledge every circuit to consider the issue has concluded that a party joined in a parallel state court contract or tort action who would destroy diversity jurisdiction is not an indispensable party under Rule 19 in a federal action to compel arbitration.") (collecting cases).

Finally, there is no risk of multiple or inconsistent obligations as Moberly and Plaintiffs are joint tortfeasors whose obligation to Defendants may be decided in separate actions. *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (2008) (holding joint tortfeasors are "permissive parties" and that it "has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit.").

### III. The Court should not abstain from exercising jurisdiction.

Defendants also argue that the Plaintiffs' Complaint should be dismissed because this Court should abstain from exercising jurisdiction, relying on *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976). Defendants point out that there is a parallel proceeding in state court with substantially the same parties and issues.

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River,* 424 U.S. at 813. Abstention is an "extraordinary and narrow exception" to the "virtually unflagging obligation" of federal courts to exercise jurisdiction given them. *Id.* at 813, 817. As has been recognized by the Sixth Circuit, the Supreme Court has identified eight factors, four in *Colorado River* and four in subsequent decisions, that a district court must consider when deciding whether to abstain from exercising its jurisdiction due to concurrent jurisdiction of a state court. *PaineWebber*, 276 F.3d at 206. These factors are:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; . . . (4) the order in which jurisdiction was obtained[;] . . . (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

7

*PaineWebber*, 276 F.3d at 206. The consideration of these factors "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* at 207.

The first factor weighs in favor of this Court exercising jurisdiction because the state court has not assumed jurisdiction over any res or property.

The second factor "relates to geographical considerations, not to the relative jurisdiction scope of state versus federal courts." *PaineWebber*, 276 F.3d at 207. Both the state court and this Court are situated in Paducah, Kentucky. As such, federal court is not less convenient for Defendants or Plaintiffs. Accordingly, this factor weighs in favor of the Court exercising jurisdiction.

The third factor would, at first glance, appear to counsel against taking jurisdiction because it would result in parallel proceedings and the possibility of inconsistent outcomes. However, for the same reasons that the threat of piecemeal litigation does not make the Moberly an indispensable party, "the desire to avoid litigating a single issue in multiple forums is insufficient to overcome the strong federal policy supporting arbitration." *PaineWebber*, 276 F.3d at 207.

As for the fourth factor, Defendants filed the state court action before the present action was filed by Plaintiffs in this Court. However, Plaintiffs filed the present action one month after the state court action and the state court matter has not proceeded beyond the initial pleadings. "Priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two

actions." *Moses H. Cone*, 460 U.S. at 22; *see also PaineWebber*, 276 F.3d at 207. Therefore, this factor is either neutral or slightly in favor of abstention.

As for the fifth factor, the Sixth Circuit noted in *PaineWebber* that where the FAA provides the source of the law for interpreting the disputed arbitration agreement, this factor weighs in favor of the Court exercising jurisdiction. *PaineWebber*, 276 F.3d at 208. The Sixth Circuit noted that this factor is less significant where there is concurrent jurisdiction, but also noted the task under the *Colorado River* analysis was not to search for "some substantial reason" for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exists "exceptional circumstances" to justify the *surrender* of that jurisdiction. *Id.* at 208 (citations omitted). Therefore, the fifth factor weighs in favor of this Court exercising jurisdiction.

As for the sixth factor, the state court action is adequate to protect Plaintiffs' rights. FAA motions may be considered concurrently on their merits in the state court. Accordingly, the sixth factor weighs in favor of this Court abstaining.

The seventh factor supports exercising jurisdiction because, as in *PaineWebber*, the state court action has not progressed to any significant degree. Plaintiffs' Complaint in this Court was filed one month after the state court action was filed. Accordingly, this factor weighs in favor of this Court exercising jurisdiction.

As for the eighth factor, the source of governing law is the FAA but state courts possess concurrent jurisdiction over these claims. As recognized in *PaineWebber*, the presence of concurrent jurisdiction "only marginally, if at all, favors abstention." *PaineWebber*, 276 F.3d at 208. In fact, "the preceding discussion of the fifth factor demonstrates that the eighth factor is insufficient to justify abstention despite concurrent

9

jurisdiction in state and federal court where a congressional act provides the governing law and expresses a preference for federal litigation." *Id.* Accordingly, this factor is either neutral or marginally in favor of abstention.

As in *PaineWebber*, this Court finds the majority of factors are either neutral or supportive of federal jurisdiction. *See also Sun Healthcare*, 2014 U.S. Dist. LEXIS 24285; *Brookdale*, 2014 U.S. Dist. LEXIS 94584; *Richmond Health*, 2014 U.S. Dist. LEXIS 112567. The fact that the state court can protect Plaintiffs' rights under the FAA does not provide the "exceptional" circumstances necessary to justify abandoning the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 818. Accordingly, abstention is not warranted in this case.

**IV.     The arbitration agreement is enforceable.**

If an arbitration agreement has been executed, there is a "clear federal policy of requiring arbitration unless the agreement to arbitrate is not part of a contract evidencing interstate commerce or is revocable 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Perry v. Thomas*, 482 U.S. 483, 490 (1987)(*quoting* 9 U.S.C. § 2.). Defendants argue the arbitration agreement in this case is unenforceable because (1) it does not evidence a transaction involving interstate commerce; (2) it is unconscionable; and (3) it is void as against public policy. (Docket #5).

**1.     The arbitration agreement involves interstate commerce.**

The Supreme Court has interpreted the language "involving commerce" to "signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003); *see also GGNSC Louisville Hillcreek, LLC v.*

10

*Warner*, 2013 WL 6796421, at *3 (W.D. Ky. December 19, 2013). (holding the FAA applies if an arbitration agreement "evidences a nexus with interstate commerce at a high level of abstraction"). Several courts have previously held that a nursing home is engaged in interstate commerce. *GGNSC Louisville Hillcreek, LLC v. Warner*, 2013 U.S. Dist. LEXIS 178136 (W.D. Ky. 2013); *Richmond*, 2014 U.S. Dist. LEXIS 112567 *21-22; *Brookdale¸*2014 U.S. Dist. LEXIS 94584 *24-25 (collecting cases). These cases all emphasized that while nursing care may be provided wholly intrastate, the "food, medicine, medical, and other supplies all likely come from elsewhere." *Sun Healthcare*, 2014 U.S. Dist. LEXIS *33. Accordingly, the arbitration agreement in this case involves interstate commerce.

Defendants argues this Court should follow *Saneii v. Robards*, 289 F. Supp. 2d 855, 858 (W.D. Ky. 2003). The *Saneii* case is distinguishable as it involved the single sale of residential real estate which is "inherently intrastate." *Id*. at 858; *see also Sun Healthcare*, 2014 U.S. Dist. LEXIS 24285 *31-33 (refusing to apply the rationale of *Saneii* to a nursing home).

### 2. The arbitration agreement is not unconscionable.

Defendants also argue the arbitration agreement is unconscionable. The doctrine of unconscionability is a narrow exception to the fundamental rule of contract law that, absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms. *See, e.g., Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. Ct. App. 2001) (finding arbitration clause was not unconscionable). Defendants claim this arbitration agreement was "likely presented to the Defendant within a lengthy stack of admissions

11

paperwork" and that there was a "gross disparity of bargaining power between the parties." (Docket #5) Defendants also cite a Wall Street Journal article which alleges unequal bargaining positions and criticizes the inclusion of arbitration clauses in the context of nursing home cases.

The Court notes that the arbitration agreement at issue here is: (1) a stand-alone agreement; (2) three page pages printed in normal font; (3) the last page contains a bold face all capital letter provision noting waiver of right to a jury trial; (4) contains no limitation on causes of actions or damages; and (6) the agreement is titled in bold face all capital letters stating it governs important legal rights and should be read carefully. Therefore, from a procedural standpoint, Defendant's argument of unconscionability has no merit.

From a substantive standpoint, Defendant's arguments essentially amount to an allegation that arbitration will not afford her an adequate opportunity to present her claims. Under the FAA, such a presumption is not a proper basis for refusing enforcement of an arbitration clause under the doctrine of unconscionability. *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592, 595 (6th Cir. 1995) (holding there is a "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary").

### 3. The arbitration agreement is not void as against public policy.

Defendants also claim the arbitration agreement is void as against public policy. Defendants' argument is based on the existence of statutes instructing nursing home facilities to encourage and assist residents in exercising their rights and the notion that arbitration interferes with their right to bring an action in court. (Docket #5). The

Supreme Court has unequivocally stated that pre-dispute arbitration agreements in the nursing home context are not exempted under the FAA. *Marmet Health Care Center, Inc. v. Brown*, 132 S.Ct. 1201, 1203-04 (2012); *Richmond Health*, 2014 U.S. Dist. LEXIS 112567 at *25. Accordingly, there is no public policy that could support Defendant's position here.

## CONCLUSION

For these reasons, and consistent with the Court's conclusions above,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss, (Docket #5), is DENIED.

cc: Counsel