UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:14-CV-00124-TBR

LIFE CARE CENTERS OF AMERICA, INC. *et al.*　　　　　　　　　　Plaintiffs

v.

THE ESTATE OF FRANCES M. NEBLETT, *et al*.　　　　　　　　　Defendants

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Plaintiffs' motion to compel arbitration and for an injunction. (Docket #9). Defendants have responded. (Docket #10). Plaintiffs have replied. (Docket #11). This matter is ripe for adjudication. For the following reasons, Plaintiffs' motion to compel arbitration (Docket #9) is DENIED.

BACKGROUND

Frances M. Neblett was a resident of Parkview Nursing and Rehabilitation Center ("Parkview") from November 12 to November 17, 2013. As part of the check-in process, Neblett signed an agreement to submit all disputes to arbitration. (Docket #1). While at Parkview, Neblett allegedly "suffered physical and emotional injuries due to inadequate care" which resulted in her death. (Docket #5).

Neblett's estate and Neblett's spouse, Floyd Neblett, filed a state court action against Life Care Centers of America, Inc. ("Life Care"), Consolidated Resources Health Care Fund I, L.P. ("Consolidated Resources"), and Lori Moberly, the administrator of Parkview. Neblett's estate brought claims of negligence, violation of Neblett's statutory rights, and wrongful death. Floyd Neblett brought claims for loss of spousal consortium and wrongful death. (Docket #1, Ex. 2).

Life Care and Consolidated Resources filed the present action seeking to enjoin the state court action and compel arbitration pursuant to the Federal Arbitration Act ("FAA"). 9 U.S.C. § 4. Life Care and Consolidated Resources now move to compel arbitration on all claims and to enjoin the state court action. (Docket #9). Defendants respond that Floyd Nesbett's wrongful death and loss of consortium claims are not covered by the arbitration agreement because Floyd Nesbett did not sign that agreement.

## STANDARD

Congress enacted the United States Arbitration Act of 1925, more commonly referred to as the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16, in response to the common law hostility toward arbitration and the refusal of many courts to enforce arbitration agreements. The United States Supreme Court has since interpreted the FAA as codifying "a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). The Supreme Court has further stated that the FAA's underlying purpose is to put arbitration agreements "upon the same footing as other contracts." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). The FAA establishes a procedural framework applicable in both federal and state courts, and also mandates that substantive federal arbitration law be applied in both. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995); *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984).

Section 3 of the FAA permits a party seeking to enforce an arbitration agreement to request that litigation be stayed until the terms of the arbitration agreement have been fulfilled. 9 U.S.C. § 3. Before compelling arbitration, the Court "must engage in a

2

limited review to determine whether the dispute is arbitrable." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)). This review requires the Court to determine first whether "a valid agreement to arbitrate exists between the parties," and second whether "the specific dispute falls within the substantive scope of the agreement." *Id.* (quoting *Javitch*, 315 F.3d at 624).

"Because arbitration agreements are fundamentally contracts," the Court must "review the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995)). In Kentucky, as in all jurisdictions, a contract is only enforceable if both parties agree to be bound by it. *See, e.g.*, *David Roth's Sons, Inc. v. Wright & Taylor, Inc.*, 343 S.W.2d 389, 391 (Ky. 1976).

## DISCUSSION

The parties have raised two issues before the Court: (I) if a decedent signs an arbitration agreement, does it bind her spouse into arbitrating the spouse's wrongful death claim; and (II) if a decedent signs an arbitration agreement, does it bind her spouse into arbitrating the spouse's loss of consortium claim.

**I.    A wrongful death claim is an independent claim belonging to the spouse and is not bound by the decedent signing an arbitration agreement.**

A "decedent cannot bind his or her beneficiaries to arbitrate their wrongful death claim." *Ping v. Beverly Enters.*, 376 S.W.3d 581, 599 (Ky. 2012). In *Ping*, the Kentucky Supreme Court explained that under Kentucky law a "wrongful death claim is not derived

3

through or on behalf of the resident, but accrues separately to the wrongful death beneficiaries and is meant to compensate them for their own pecuniary loss." *Id*. Specifically, the right to bring a wrongful death claim is created by statute for the benefit of the decedent's spouse. KRS § 411.130 (2014); *Ping*, 376 S.W. 3d at 598. The spouse has an independent claim for wrongful death, and since the spouse has not signed the arbitration agreement, the spouse cannot be held to it. *Ping,* 376 S.W.3d at 600 ("Arbitration is a matter of contract, . . . It is not something that one party may simply impose upon another."); *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1016 (6th Cir. 2003) ("Arbitration cannot be forced upon parties who do not consent to it.").

Plaintiffs raise a host of arguments in objection to *Ping*, but none are persuasive. First, Plaintiffs argue *Ping* is bad law because of the Supreme Court's decision in *Marmet Health Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201 (2012). In *Marmet*, the Supreme Court struck down West Virginia's "categorical rule" prohibiting "predispute agreements to arbitrate personal-injury or wrongful-death claims against nursing homes." *Id*. at 1203-04. *Marmet* is distinguishable because neither Kentucky's wrongful death statute nor *Ping* create a categorical rule limiting a party's ability to arbitrate. KRS § 411.130 (2014). Instead, Kentucky law merely defines to whom a wrongful death claim accrues.[1]

Plaintiffs attempt to distinguish *Ping* by relying on *Pete v. Anderson* 413 S.W.3d 291 (Ky. 2013). Plaintiffs quote Justice Noble's dissent and interpret it as support for

---

[1] Plaintiffs real complaint is that although the arbitration agreement allows Plaintiffs to arbitrate with Frances Nesbett's estate, it does not allow Plaintiffs to force Floyd Nesbett to also arbitrate her claims. This does not mean Kentucky has a prohibition against arbitration. Plaintiffs and Floyd Nesbett could still agree to arbitrate.

4

their argument that parties should not be allowed to split claims.[2] *Id*. at 304. (Noble, J., concurring in part and dissenting in part). Plaintiffs ignore the *Pete* court explicitly reaffirmed *Ping* and explained its meaning:

> Finally, this Court's recent decision in *Ping* . . . puts to rest any dispute as to whether the statutory beneficiaries are the real parties in interest to a wrongful death action. In *Ping*, the administrator of the estate of a woman who had been a long-term care facility resident brought suit against the operators of the facility alleging negligence resulting in injuries causing the woman's death. 376 S.W.3d at 586. Our opinion, which resolved the question of whether a decedent can bind his or her beneficiaries to arbitrate a wrongful death claim, examined the distinction between the wrongful death statute and the survival statute, KRS 411.140.8 376 S.W.3d at 598. We concluded that while a survival action is derivative of a personal injury claim which belongs to the estate, a wrongful death action is an independent claim belonging to the intended beneficiaries under KRS 411.130, a claim that "accrues separately to the wrongful death beneficiaries and is meant to compensate them for their own pecuniary loss." *Id*. at 598-99. Based on the plain language of KRS 411.130 and our holding in *Ping*, we must reject Pete's contention that the wrongful death action belongs to the estate.

Finally, Plaintiffs repeatedly stress the "strong federal policy favoring arbitration" as proof their argument prevails. (Docket #9, 11).[3] However, a policy favoring arbitration is not a talisman that can be invoked, sending any dispute to the arbitrator if an arbitration agreement can be produced. Courts must still engaged "a limited review to determine whether the dispute is arbitrable" which includes determining whether "a valid agreement to arbitrate exists between the parties." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). Several courts, including *Ping*, have acknowledged the

---

[2] Plaintiffs' claim-splitting and waiver-of-liability arguments suffer from the same flaw. They attempt, by comparison, to explain what Kentucky law should be, but ignore Kentucky Supreme Court precedents which directly explain what the law is.

[3] Plaintiffs also complain they will be deprived of the "constitutional right to contract for arbitration on liability, a protection afforded by Kentucky's Constitution." (Docket #9). How? Plaintiffs have contracted for arbitration with Nesbett, and they will arbitrate their claims with his estate. What Plaintiffs really request is a way to force parties who did not sign the arbitration agreement to nonetheless be bound by it.

5

policy favoring arbitration yet still held claims were not subject to arbitration. *Ping*, 376 S.W.3d at 588; *Pete*, 413 S.W.3d 291; *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1016 (6th Cir. 2003) ("arbitration is a matter of contract and, in spite of the strong policy in its favor, a party cannot be compelled to arbitrate any dispute which he has not agreed to submit.") (*quoting Sweeney v. Grange Mut. Cas. Co.*, 766 N.E.2d 212, 218 (Ohio Ct. App. 2001)); *Stepp v. Wurtland Health Care Ctr., Inc.*, 2014 Ky. App. Unpub. LEXIS 94 (Ky. App. 2014) (unpublished).

## II. A loss of consortium claim belongs to the spouse and are not bound by arbitration agreement.

A loss of consortium claim is also a statutorily created independent claim that accrues to the spouse. KRS § 411.145 (2014); *Martin v. Ohio County Hosp. Corp.*, 295 S.W.3d 104, 108 (Ky. 2009) ("the General Assembly made loss of consortium a statutory cause of action, which belongs specifically to a spouse, not to the estate of the deceased"). Therefore, just as a decedent cannot bind his heirs to arbitrate a wrongful death claim, the decedent also cannot bind his heirs to arbitrate a loss of consortium claim. *Stepp v. Wurtland Health Care Ctr., Inc.*, 2014 Ky. App. Unpub. LEXIS 94*4 (Ky. App. 2014) (unpublished) ("As with the wrongful death action discussed above, a loss of consortium claims would be a separate and independent cause of action that accrues to a nonparty to the arbitration agreement").

## CONCLUSION

Floyd Nesbett's wrongful death and loss of consortium claims are created by Kentucky statute and accrue directly to him. Frances Neblett's signature on an arbitration agreement does not bind Floyd Nesbett to arbitrate his claims, though it does bind

6

Frances Neblett's estate to arbitration. Because the Court will deny Defendants' motion to compel arbitration, the Court will also deny Defendants' request to enjoin the state court action from proceeding.

     IT IS HEREBY ORDERED that Plaintiffs' motion to compel arbitration and for an injunction, (Docket #9), is DENIED.

cc:    Counsel